FILED
2018 Jun-22  PM 03:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **BEVERLY SPENCER, _et al._,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 7:16-cv-01334-LSC** |
| | ) | |
| **SHERIFF JONATHAN BENISON, _et al._,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT SHERIFF BENISON'S MOTION FOR SUMMARY JUDGMENT

---

**COMES NOW**, the Plaintiffs, Beverly Spencer, CBS Properties, LLC, and B & V Wrecker Service, Inc., by and through the undersigned counsel, and submits this Response in Opposition to Defendant Sheriff Jonathan Benison's Motion for Summary Judgment (Doc. 43, 44).

In response, the Plaintiffs rely upon the Deposition of Sheriff Jonathan Benison (attached hereto and incorporated herein by reference, marked as Exhibit A), the Deposition of Beverly Spencer (attached hereto and incorporated herein by reference, marked as Exhibit B), the Deposition of Deputy Charlie Davis (attached hereto and incorporated herein by reference, marked as Exhibit C), the Deposition of Deputy Jeffrey Grant (attached hereto and incorporated herein by reference, marked as Exhibit D), the Deposition of Tony Boshell (attached hereto and

incorporated herein by reference, marked as Exhibit E), the First Recording of portions of the February 24, 2016 incident (the recording will be physically filed with the Court and incorporated herein by reference, marked as Exhibit F), the Second Recording of portions of the February 24, 2016 incident (the recording will be physically filed with the Court and incorporated herein by reference, marked as Exhibit G), the Third Recording of portions of the February 24, 2016 incident (the recording will be physically filed with the Court and incorporated herein by reference, marked as Exhibit H), a survey drawn on January 22, 2018 (attached hereto and incorporated herein by reference, marked as Exhibit I), the May 20, 2014, Order and Memorandum of Opinion entered by the Honorable Benjamin Cohen, United States Bankruptcy Judge (attached hereto and incorporated herein by reference, marked as Exhibit J), the Deposition of Bernard Gomez (attached hereto and incorporated herein by reference, marked as Exhibit K), the Deposition of Che Williamson (attached hereto and incorporated herein by reference, marked as Exhibit L), the Deposition of Janice Henderson (attached hereto and incorporated herein by reference, marked as Exhibit M), the Warranty Deed (attached hereto and incorporated herein by reference, marked as Exhibit N), a survey drawn on March 19, 2015 and revised on January 24, 2018 (attached hereto and incorporated herein by reference, marked as Exhibit O), the Greene County Bingo Rules with Amendments (attached hereto and incorporated herein by reference, marked as

Exhibit P), an aerial Google Maps photo taken in May of 2014 (attached hereto and incorporated herein by reference, marked as Exhibit Q), and an aerial Google Maps photo taken in November of 2016 (attached hereto and incorporated herein by reference, marked as Exhibit R). In response, Plaintiffs submit the following:

## <u>TABLE OF CONTENTS</u>

DISPUTED FACTS OFFERED BY MOVANT ......................................................4

NARRATIVE SUMMARY OF UNDISPUTED MATERIAL FACT ....................6

STANDARD OF REVIEW ..................................................................................12

ARGUMENT .......................................................................................................13

I.      Defendant Sheriff Benison's Motion for Summary Judgment is due to be denied because he is not protected under qualified immunity due to the fact that Defendant Sheriff Benison ordered Plaintiff Spencer to vacate his own land and ousted Plaintiffs from their own land. ...................................................................13

A.      Defendant Sheriff Benison is not shielded by qualified immunity because Defendant Sheriff Benison was not acting within the scope of his discretionary authority. ...............................................................................................................14

B.      Alternatively, if this Honorable Court finds that Defendant Sheriff Benison was acting within his discretionary authority, Defendant Sheriff Benison still is not shielded by qualified immunity because Defendant Sheriff Benison violated a clearly established constitutional right. .................................................................16

1.      The Plaintiff has shown that Defendant Sheriff Benison violated a constitutional right. ...............................................................................................17

2.      Plaintiffs' rights were clearly established at the time of Defendant Sheriff Benison's conduct and Defendant Sheriff Benison possessed extensive information regarding the rights of the Plaintiffs. .......................................................................20

II.     Plaintiffs have sufficiently shown that Defendant Sheriff Benison conspired with the Bingo Defendants to deprive the Plaintiffs of their constitutional rights; and thus, Defendant Sheriff Benison is not entitled to a summary judgment concerning Count II (the § 1983 conspiracy claim). ...............................................24

III.   Defendant Sheriff Benison's claim to reimbursement of attorneys' fees is due to be denied because Defendant Sheriff Benison has not prevailed in this litigation. .......................................................................................................................27

CONCLUSION ........................................................................................................28

## DISPUTED FACTS OFFERED BY MOVANT

6.   The Frontier property was not landlocked when purchased. The purchase agreement expressly granted an easement for the purpose of ingress and egress. [Exhibit N].

9.   To the extent Defendant Sheriff Benison is suggesting that the roadway needed expansion due to any kind of incline, said suggestion is disputed. The Bingo Defendants, Belle Mere Properties, LLC, Accuity Capital Group, LLC, Dream, Inc., Bernard Gomez, and Che Williamson, constructed a roadway, prior to this litigation, within the boundary of the easement for ingress and egress. [Exhibit O; *see also* Exhibit E, Depo. of Boshell, p. 29].

11.   Deputy Grant was present when Plaintiff Spencer was marking the easement boundaries. [Exhibit C, Depo. of Davis, p. 48].

14.   Tony Boshell had no legal or factual authority to support his contention that the power company owned a 15 foot easement on either side of the power line. [Exhibit E, Depo. of Boshell, p. 29-32].

15.   *See* paragraph 14.

16.   To the extent that Defendant Sheriff Benison is suggesting that the roadway needed expansion because the roadway was too narrow to allow cars to pass, said suggestion is disputed. Cars were able to pass on the roadway and access Highway 11 from the Bingo Defendants' property. [Exhibit E, Depo. of Boshell, p. 28-29].

17.   Mr. Boshell intentionally constructed the roadway expansion outside the bounds of the easement and on Plaintiffs' property. [Exhibit E, Depo of Boshell, p. 29-32].

18.   The acreage that was cleared by the roadway expansion was substantial. [*See* Exhibit I; Exhibit Q; Exhibit R].

28.   Defendant Sheriff Benison acknowledged receiving a copy of the Bankruptcy Order that judicially established the easement. [Exhibit H, starting at 17:16; *see also* Exhibit A, Depo. of Benison, p. 83-84].

34.   Nothing was blocking the roadway to hinder any vehicle from entering or exiting the Bingo Defendants' property. [Exhibit E, Depo. of Boshell, p. 28-29; s*ee also* Exhibit F, starting at 9:30; Exhibit G, starting at 0:55; Exhibit H, starting at 4:15].

35.   *See* paragraph 34.

39.   *See* paragraph 34.

40.   *See* paragraph 34.

46.   Defendant Sheriff Benison stated that he would arrest Plaintiff Spencer for disrespecting an officer. When Plaintiff Spencer asked how he was disrespecting Defendant Sheriff Benison, Defendant Sheriff Benison responded "because of all the conduct today," which included Plaintiff Spencer's reluctance to move his vehicles off of his own property. [Exhibit F, starting at 10:00].

## **NARRATIVE SUMMARY OF UNDISPUTED MATERIAL FACT**

1.   On May 20, 2014, the Honorable Benjamin Cohen, United Stated Bankruptcy Judge, entered an order that judicially established the easement (hereinafter referred to as the "Judicially Determined Easement") which is the subject of the controversy that involves Defendant Sheriff Jonathan Benison. [Exhibit J; *See also* Exhibit I].

2.   Thereafter, the Bingo Defendants, Belle Mere Properties, LLC, Accuity Capital Group, LLC, Dream, Inc., Bernard Gomez, and Che Williamson, constructed a roadway within the bounds of the Judicially Determined Easement. [Exhibit O; *see also* Exhibit E, Depo. of Boshell, p. 29].

3.   However, in late 2015 or early 2016, the Bingo Defendants began expanding the existing roadway outside the bounds of the Judicially Determined

Easement which encroached onto Plaintiff CBS Properties, LLC's[1] land. [Exhibit I; Exhibit K, Depo. of Gomez, p. 76].

4.      Surveying equipment would not be necessary to ascertain a general idea of the boundaries of the Judicially Determined Easement. The Judicially Determined Easement runs 25 feet on either side of a three-phase powerline that runs from U.S. Highway 11 to the Bingo Defendants' property. [Exhibit J and Exhibit I].

5.      On multiple occasions, Plaintiff Spencer called the Greene County Sheriff's Office to report that the Bingo Defendants were expanding a roadway on Plaintiffs' property and outside the bounds of the Judicially Determined Easement. On January 13, 2016, Deputy Jeffrey Grant of the Greene County Sheriff's Office responded to Plaintiff Spencer's report. [Exhibit D, Depo. of Grant, p. 32]. When Deputy Grant arrived at the scene, he was advised by Plaintiff Spencer that a "white male subject," later identified as Tony Boshell, was trespassing on his (Plaintiff Spencer's) property with a bulldozer. [Exhibit D, Depo. of Grant, p. 34-35]. Mr. Boshell was hired by Defendant Gomez, on behalf of the Bingo Defendants, to "make the driveway longer." [Exhibit D, Depo. of Grant, p. 35]. At this time, Mr. Boshell had ceased working on the roadway and represented to Deputy Grant that he (Mr. Boshell) would not go back to working on the roadway expansion. [Exhibit D, Depo. of Grant, p. 35].

---

[1] Plaintiff Beverly Spencer is the owner of Plaintiff CBS Properties, LLC.

6.     However, Mr. Boshell's representations were false. On January 18, 2016, Plaintiff Spencer called the Greene County Sheriff's Office to report another criminal trespass by the Bingo Defendants. [Exhibit C, Depo. of Davis, p. 29]. This time Deputy Charles Davis responded to the report. [Exhibit C, Depo. of Davis, p. 29-30]. When Deputy Davis arrived at the property, he (Deputy Davis) saw Plaintiff Spencer and "a gentleman on a bulldozer," who was later identified as Mr. Boshell. [Exhibit C, Depo. of Davis, p. 30]. During this incident, Deputy Davis suggested that Mr. Boshell stop working on the roadway. [Exhibit C, Depo. of Davis, p. 33]. Deputy Davis realized that he (Deputy Davis) could not order Mr. Boshell to cease working on the roadway because he (Deputy Davis) was unaware of the property boundary lines. [Exhibit C, Depo. of Davis, p. 33]. However, Deputy Davis testified that Plaintiff Spencer showed him (Deputy Davis) the boundary line of the Judicially Determined Easement. [Exhibit C, Depo. of Davis, p. 48].

7.     It was a policy of the Greene County Sheriff's Office to not get involved with a "civil matter." [*See* Exhibit C, Depo. of Davis, p. 27-29, 33-34, 41-44, 51-52; Exhibit D, Depo. of Grant, p. 31-32, 40-42].

8.     The Greene County Sheriff's Office adhered to this policy until February 24, 2016. On February 24, 2016, Mr. Boshell, as directed by the Bingo Defendants, continued to expand the roadway once again outside of the bounds of the Judicially Determined Easement, after being told multiple time to cease the construction.

[Exhibit E, Depo. of Boshell, p. 36-41; Exhibit A, Depo. of Sheriff, p. 88-92]. In addition, agents of the Bingo Defendants blocked-in Plaintiff Spencer's vehicles on Plaintiffs' own property. [Exhibit B, Depo. of Spencer, p. 128].

9.     During this incident, Defendant Sheriff Benison interjected himself into a "civil matter" by ejecting and ousting Plaintiff Spencer from Plaintiffs' property. [Exhibit F; Exhibit B, Depo. of Spencer, p. 112-13, 128-29]. Defendant Sheriff Benison knew the boundary lines of the Judicially Determined Easement because Plaintiff Spencer measured the easement boundaries while in the presence of Defendant Sheriff Benison. [*See* Exhibit F, starting at 5:55; Exhibit H, starting at 7:30; Exhibit H, starting at 12:25; *see also* Exhibit B, Depo. of Spencer, p. 19-21, 28-29]. Further, during this incident, Defendant Sheriff Benison even acknowledged the location of Plaintiff Spencer's bulldozer and that said bulldozer was on Plaintiffs' land. [Exhibit H, starting at 1:40]. On the same day, Sheriff Benison also had a conversation with Defendant Bernard Gomez, an employee and agent of the Bingo Defendants, in or around the bingo hall. Benison specifically went to the bingo hall to meet with Gomez. Shortly thereafter, Benison and Gomez went back down to where the Plaintiff Spencer was located. [Exhibit B, Depo. of Spencer, p. 109-10]. Moreover, Defendant Sheriff Benison acknowledged receipt of Exhibit J (the May 20, 2014 Bankruptcy Order) which judicially established the easement (the Judicially Determined Easement) which was the subject of the February 24, 2016

incident. [Exhibit H, starting at 17:16; *see also* Exhibit A, Depo. of Benison, p. 83-84; Exhibit B, Depo. of Spencer, p. 19-21, 30-31].

10.   In addition, Deputy Davis and Deputy Grant were present on January 18, 2016 when Plaintiff Spencer was measuring off the easement boundary line. [Exhibit C, Depo. of Davis, p. 48]. Deputy Davis relayed the facts and circumstances of January 18, 2016 to other deputies within the Greene County Sheriff's Office, as well, as to Defendant Sheriff Benison. [Exhibit C, Depo. of Davis, p. 38-44]. The deputies were also shown a copy of Exhibit J (the May 20, 2014 Bankruptcy Order). [Exhibit K, Depo. of Gomez, p. 99].

11.   Further, Mr. Boshell even told Defendant Sheriff Benison that he (Mr. Boshell) was, in fact, constructing the roadway on Plaintiffs' property with knowledge of such. [Exhibit E, Depo. of Boshell, p. 36-37].

12.   With this information regarding the boundary of the Judicially Determined Easement and with the Greene County Sheriff's Office's policy of staying out of civil matters, Defendant Sheriff Benison still interjected himself into this situation, ousted Plaintiffs from their own property, and ordered Plaintiff Spencer to vacate the property and remove his vehicles from his own property under the threat of arrest. [*See* Exhibit F; *see also* Exhibit B, Depo. of Spencer, p. 128-29]. Specifically, Defendant Sheriff Benison stated that he would arrest Plaintiff Spencer for disrespecting an officer. When Plaintiff Spencer asked how he was disrespecting

Defendant Sheriff Benison, Defendant Sheriff Benison responded "because of all the conduct today," which included Plaintiff Spencer's reluctance to move his vehicles off of his own property. [Exhibit F, starting at 10:00].

13. Additionally, on February 24, 2016, Defendant Sheriff Benison exclaimed that he (Defendant Sheriff Benison) had customers in the Bingo Defendants' bingo hall. [Exhibit F, starting at 8:40].

14. As a result of the February 24, 2016 incident, the Bingo Defendants finished constructing the roadway which encroached on Plaintiffs' property, and Plaintiff Spencer ceased confronting the Bingo Defendants because he (Plaintiff Spencer) was told not to go back onto his (Plaintiff Spencer's and the other Plaintiffs') property. [Exhibit B, Depo. of Spencer, p. 118-20].

15. On February 24, 2016, contrary to the facts portrayed in Defendant Sheriff Benison's Motion for Summary Judgment, Plaintiff Spencer's vehicles were not blocking access to the Bingo Defendants' bingo hall. [*See* Exhibit F, starting at 9:30; Exhibit G, starting at 0:55; Exhibit H, starting at 4:15]. Further, an agent of the Bingo Defendants had parked their (the agent's) vehicle on Plaintiffs' property in such a manner that said vehicle was blocking-in Plaintiff Spencer's vehicles. [Exhibit B, Depo. of Spencer, p. 127-29].

16. Defendant Sheriff Benison has a direct pecuniary interest in the well-being of the Bingo Defendants' bingo hall. [*See* Exhibit P].

17.   It is undisputed that Plaintiffs owned the property adjoining the Judicially Determined Easement.

## STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23, 106 S.Ct. 2548. "If the moving party bears the burden of proof at trial, it must demonstrate that 'on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party.'" *Irby v. Bittick*, 44 F.3d 949, 953 (11th Cir.1995) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir.1991) (en banc)). In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir.1996).

Once the moving party has met his burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (internal quotations omitted); *see also* Fed.R.Civ.P. 56(c). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks*

>Corp.*, 281 F.3d at 1224 (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir.1991)).

*General Star Nat. Ins. Co. v. Higginbotham*, 877 F. Supp. 2d 1181, 1187-88 (N.D. Ala. 2012).

## **ARGUMENT**

Defendant Sheriff Benison's Motion for Summary Judgment is due to be denied because there is a genuine issue of material fact and Defendant Sheriff Benison is not entitled to a judgment as a matter of law. As such, Plaintiffs respectfully request this Honorable Court to deny Defendant Sheriff Benison's Motion for Summary Judgment.

**I.    Defendant Sheriff Benison's Motion for Summary Judgment is due to be denied because he is not protected under qualified immunity due to the fact that Defendant Sheriff Benison ordered Plaintiff Spencer to vacate his own land and ousted Plaintiffs from their own land.**

Defendant Sheriff Benison's Motion for Summary Judgment is due to be denied because Defendant Sheriff Benison is not protected under qualified immunity. Defendant Sheriff Benison is not protected by qualified immunity in this case because Defendant Sheriff Benison acted outside the scope of his discretionary authority and, alternatively, violated Plaintiffs' constitutional rights.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their *conduct does not violate clearly established statutory or constitutional rights* of which a reasonable person would

have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (emphasis added). "Qualified immunity balances two important interest – the need to hold public officials accountable when they *exercise power irresponsibly* and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* (emphasis added).

**A. Defendant Sheriff Benison is not shielded by qualified immunity because Defendant Sheriff Benison was not acting within the scope of his discretionary authority.**

"To even be potentially eligible for qualified immunity, the official has the burden of establishing that he was acting 'within the scope of his discretionary authority.'" *O'Rourke v. Hayes*, 378 F. 3d 1201, 1205 (11th Cir. 2004) (quoting *Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir. 1995)). "A defendant unable to meet this burden may not receive summary judgment on qualified immunity grounds." *Id.* (citing *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)).

> In making this determination, [i]nstead of focusing on whether the acts in question involved the exercise of actual discretion, we assess whether they are of a type that fell within the employee's job responsibilities. Our inquiry is two-fold. We ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize.... In applying each prong of this test, we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances.

*Id.* (quoting *Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). Thus, here, the question is whether taking property or ousting an individual from their own property absent a court order or commission of a crime is part of his job-related powers and responsibilities of Defendant Sheriff Benison. *Cf. id.* ("Thus, in determining 'whether a police officer may assert qualified immunity against a Fourth Amendment claim, we do not ask whether he has the right to engage in unconstitutional searches and seizures, but whether engaging in searches and seizures in general is a part of his job-related powers and responsibilities.'") (quoting *Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). Under Alabama law, the duties of sheriffs in Alabama do not include the duty or responsibility to take property from private individuals or oust an individual from their own property absent a court order or commission of a crime. *See* Ala. Code. § 36-22-3.

Here, the act, complained of as shown through discovery, is that Defendant Sheriff Benison took property from the Plaintiffs and ousted Plaintiffs from their own property; not refusing or failing to arrest the Bingo Defendants and/or their agents. Defendant ordered Plaintiff Spencer to vacate his property and gave Plaintiffs' property to the Bingo Defendants by allowing the Bingo Defendants to continue expanding the roadway onto Plaintiffs' land. Furthermore, there was no court order directed to Defendant Sheriff Benison to eject Plaintiffs from their own property. Moreover, the Plaintiffs were not committing any crime. Therefore, the act

of taking property from a private individual and ousting the private individual from their own property[2] is not a duty or responsibility of a sheriff in Alabama. Defendant Sheriff Benison was not acting within the scope of his discretionary authority and is not shielded by qualified immunity under the law. Therefore, Defendant Sheriff Benison's Motion for Summary Judgment is due to be denied.

**B. If this Honorable Court finds that Defendant Sheriff Benison was acting within his discretionary authority, Defendant Sheriff Benison still is not shielded by qualified immunity because Defendant Sheriff Benison violated a clearly established constitutional right.**

If this Honorable Court finds that Defendant Sheriff Benison was acting within the scope of his discretionary authority, Defendant Sheriff Benison still is not afforded qualified immunity because he violated a clearly established constitutional right.

"Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson*, 555 U.S. at 232. The United States Supreme Court

---

[2] Defendant Sheriff Benison contends that the act of not arresting the Bingo Defendants is what caused the injuries complained of as shown through discovery. However, this is a mischaracterization of the facts. Defendant Sheriff Benison took Plaintiffs' land when he ejected Plaintiff Spencer from his own property and effectively gave that land to the Bingo Defendants. Further, Defendant Sheriff Benison interrupted Plaintiffs' right to the uninterrupted use and enjoyment of their own property by ordering Plaintiff Spencer to vacate his own property.

"mandated a two-step sequence for resolving officials' qualified immunity claims."
*Id.*

 "First, the court must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right." *Id.* "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Id.* "Courts evaluate the official's conduct under an objective, reasonable person standard; the relevant question on a motion for summary judgment based on a defense of qualified immunity is whether a reasonable official could have believed his or her actions were lawful in light of clearly established law *and the information possessed by the official at the time the conduct occurred*." *Stewart v. Baldwin Cnty. Bd. of Educ.*, 908 F.2d 1499, 1503 (11th Cir. 1990) (emphasis added).

  **1. Plaintiffs have shown that Defendant Sheriff Benison violated a constitutional right.**

 The Plaintiffs' right to the uninterrupted use and enjoyment of his own property, as well as, Plaintiffs' Fifth and Fourteenth were violated by Defendant Sheriff Benison. U.S. Const. amend. V, XIV; s*ee also Point Properties, Inc. v. Anderson*, 584 So. 2d 1332, 1339-40 (Ala. 1991). Here, Defendant Sheriff Benison violated the Plaintiffs' constitutional rights when Defendant Sheriff Benison ordered

Plaintiff Spencer to vacate his own property without just compensation or due process.

The Fourteenth Amendment to the United States Constitution states, in part, "nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ." "The Supreme Court has interpreted this clause as providing two different kinds of constitutional protection: procedural due process and substantive due process." *Dragash v. Saucier*, 2017 WL 5202252, at *1 (11th Cir. Sept. 26, 2017) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). Here, Defendant Sheriff Benison violated Plaintiffs' procedural due process protection; rather than Plaintiffs' substantive due process protection.

"The Due Process Clause provides procedural due process protection, a violation which is actionable under 42 U.S.C. § 1983." *Sanders v. Henry Cnty., Ga.*, 484 Fed. Appx. 395, 397 (11th Cir. 2012). "Procedural due process cases typically focus on whether governments can take away property without affording its owner adequate notice and opportunity to be heard." *Id.* (citing *Greenbriar Vill., L.L.C. v. Mountain Brook, City*, 345 F.3d 1258, 1264 (11th Cir. 2003)). "To analyze a procedural due process claim, a court examines (1) whether there is enough of a protectable property right at stake; (2) the amount of process that is due for that protectable rights; and (3) the process actually provided." *Id.* (citing *Greenbriar Vill., L.L.C. v. Mountain Brook, City*, 345 F.3d 1258, 1264 (11th Cir. 2003)).

Here, there is substantial evidence of a protectable property right at stake. There is no dispute that Plaintiffs owned the property adjacent to the Judicially Determined Easement upon which the Bingo Defendants purposefully expanded their roadway. Second, Plaintiffs were not afforded any process before Defendant Sheriff Benison ordered Plaintiff Spencer to vacate his own property. Defendant Sheriff Benison decided, on-the-spot, that Plaintiff Spencer had no right to be on his own property and ousted Plaintiff Spencer from his property. Defendant Sheriff Benison did not give Plaintiff Spencer any prior notice or provide a hearing before ejecting and ousting Plaintiffs from their own property. Therefore, Plaintiffs' procedural due process protection under the Fourteenth Amendment was violated. As such, Defendant Sheriff Benison violated Plaintiffs' constitutional right.

Moreover, not only did Defendant Sheriff Benison violate Plaintiffs' Fourteenth Amendment rights, Benison also violated Plaintiffs' Fifth Amendment rights. The Fifth Amendment to the United States Constitution provides, in part, "nor shall private property be taken for public use, without just compensation." The Takings Clause of the Fifth Amendment has been incorporated into the Fourteenth Amendment and applies to state governments. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005). The Fifth Amendment "is designed not to limit the government interference with property rights *per se*, but rather to secure

compensation in the event of otherwise proper interference amounting to a taking." *Id.* at 536-37.

"The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property." *Id.* at 537. The Takings Clause reaches "the functional equivalent of a practical ouster of the owner's possession." *See id.* ("[I]t was generally thought that the Takings Clause reached only a direct appropriation of property, or the functional equivalent of a practical ouster of the owner's possession").

Here, Defendant Sheriff Benison ordered Plaintiff Spencer to vacate his property. This equates to an ouster of Plaintiffs' from their own property caused by Benison's unlawful order. Plaintiffs received no kind of compensation for the ouster. As such, Plaintiffs were ousted from their own property by Sheriff Benison without just compensation. Thus, Benison violated Plaintiffs' Fifth Amendment right. Therefore, Defendant Sheriff Benison's Motion for Summary Judgment is due to be denied because Defendant Sheriff Benison violated Plaintiffs' constitutional rights, under the Fourteenth and Fifth Amendments.

**2. Plaintiffs' rights were clearly established at the time of Defendant Sheriff Benison's conduct and Defendant Sheriff Benison possessed extensive information regarding the rights of the Plaintiffs.**

The Plaintiffs' possess the right to the uninterrupted use and enjoyment of their property. Plaintiffs' Fourteenth and Fifth Amendment rights were clearly

established at the time Defendant Sheriff Benison ejected and ousted Plaintiffs from their own property. "This inquiry requires the court to conduct careful examination of the factual allegations, one that asks 'whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted.'" *Barnette v. Phenix City, Alabama*, 2006 WL 680595, at *8 (M.D. Ala. Mar. 15, 2006) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). "Essentially, a defendant is entitled to 'fair warning' that his conduct deprived his victim of a constitutional right." *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

Here, Defendant Sheriff Benison violated Plaintiffs' property rights, as well as, Plaintiffs' Fifth and Fourteenth Amendment rights, as set forth by the facts and cases cited in Section I.B.1, *supra*. Furthermore, Defendant Sheriff Benison was exposed to a plethora of facts demonstrating Plaintiffs' constitutional rights.

First, Defendant Sheriff Benison was presented with Exhibit J (the May 20, 2014 Bankruptcy Order) which established the Judicially Determined Easement. Second, during the February 24, 2018 incident, Plaintiff Spencer specifically showed Defendant Sheriff Benison the boundaries of the Judicially Determined Easement. Spencer took out a measuring tape and measured the 25 foot boundary on the side of the Judicially Determined Easement where the encroaching expansion was taking place.

Third, Defendant Sheriff Benison's deputies were shown the boundaries of the Judicially Determined Easement prior to February 24, 2018 in the same manner as Defendant Sheriff Benison (i.e., by Plaintiff Spencer measuring the boundaries). **Moreover, Mr. Boshell, the individual employed by the Bingo Defendants to construct the roadway, told Defendant Sheriff Benison that he was expanding the roadway on Plaintiffs' property knowing that he was doing so**. Even though Defendant Sheriff Benison did not have "complex surveying equipment" during the February 24, 2018 incident, the numerous facts before him, including, but not limited to, the fact that Plaintiff Spencer found a simple way to ascertain the boundaries of the Judicially Determined Easement while Defendant Sheriff Benison was present, goes to show that Defendant Sheriff Benison knew of the boundaries of the Judicially Determined Easement and was aware of the encroachment onto Plaintiffs' property. Nevertheless, Benison took Plaintiffs' property and ousted Plaintiffs, under the threat of arrest, without due process or just compensation. Thus, Defendant Sheriff Benison had fair warning of the boundaries of the Judicially Determined Easement, and Plaintiffs' right to the uninterrupted use and enjoyment of their property and Plaintiffs' Fourteenth and Fifth Amendment rights were clearly established.

If Sheriff Benison, nevertheless, contends that he did not know of the easement boundary or had no way of verifying the easement boundary, then Benison

should not have interjected himself into this matter by ordering Plaintiff Spencer to vacate his own property. Said differently, Defendant Sheriff Benison, under his own position, had no reason to order any person off anyone's land on February 24, 2018. However, he did so to see that his pecuniary gambling interest was protected. Sheriff Benison, instead of staying out of the situation, interjected himself into this matter and, in fact, ordered Plaintiff Spencer to vacate Plaintiffs' property and threatened arrest of Plaintiff did not comply.

Moreover, Defendant Sheriff Benison's claim that the Bingo Defendants were not trespassing on Plaintiffs' property because there was an 15 foot, on either side of the three-phase power line, utility easement, held by a third-party, is unmeritorious. First, Defendant Sheriff Benison has cited no authority to suggest that a third-party utility easement moves and/or changes the location of the Judicially Determined Easement. Second, Sheriff Benison has not set forth any facts to suggest that he (Benison) knew of any third-party utility easement, or even if such an easement exists, at the time of the February 24, 2016 incident. Moreover, Exhibit J (the May 20, 2014 Bankruptcy Order) does not subject the location of the Judicially Determined Easement to any easements potentially in existence. Rather, Exhibit J unequivocally states that the Judicially Determined Easement's boundaries span 25 feet on either side of the three-phase power line that runs to the Bingo Defendants' property.

Thus, considering all of information before Defendant Sheriff Benison, Benison had a fair warning that he (Benison) was violating the constitutional rights of the Plaintiffs. As such, Defendant Sheriff Benison is not shielded by qualified immunity, and Benison's Motion for Summary Judgment is due to be denied.

**II.   Plaintiffs have sufficiently shown that Defendant Sheriff Benison conspired with the Bingo Defendants to deprive the Plaintiffs of their constitutional rights. Thus, Defendant Sheriff Benison is not entitled to summary judgment as to Count II (the § 1983 conspiracy claim).**

In section II of Defendant Sheriff Benison's Motion for Summary Judgment, Defendant Sheriff Benison contends that Plaintiffs' Count II (conspiracy claim) fails because Plaintiffs have neither proven an understanding between Defendants nor a constitutional violation. "A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010) (citing *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998)). "The plaintiff attempting to prove such a conspiracy must show that the parties 'reached an understanding' to deny the plaintiff his or her rights. The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy." *Id.* (quoting *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990)). "***Factual proof of the existence of a § 1983 conspiracy may be based on circumstantial evidence.***" *Id.* (citing *Burrell v. Bd. of Trs. Of Ga. Military Coll.*, 970 F.2d 785, 789

(11th Cir. 1992)) (emphasis added). "Circumstantial evidence has no less weight than direct evidence as long as it reasonably establishes that fact rather than anything else." *Burrell v. Bd. of Trs. of Ga. Military Coll.*, 970 F. 2d 785, 788 (11th Cir. 1992).

First, as stated in Section II, *supra*, Plaintiffs have shown sufficient evidence to support a finding that Defendant Sheriff Benison violated Plaintiffs' constitutional rights. Section II is incorporated here as set forth in its entirety. Thus, Plaintiffs have shown that Benison has violated their (Plaintiffs') constitutional rights.

Second, Plaintiffs must prove an "understanding" between Defendant Sheriff Benison and the Bingo Defendants. Said understanding may be proven through two substantial pieces of evidence alone. First, on February 24, 2018, Defendant Sheriff Benison exclaimed that **his customers** were in the Bingo Defendants' bingo hall. Said assertion directly shows that Defendant Sheriff Benison claimed a pecuniary interest in the Bingo Defendants' bingo operation. Defendant Sheriff Benison acted as and acknowledged that the bingo hall patrons are his (Defendant Sheriff Benison's) customers, as well as the Bingo Defendants' customers. Second, Mr. Boshell, an agent of the Bingo Defendants, testified that he explicitly told Defendant Sheriff that he (Mr. Boshell) knew he was moving dirt on and expanding the roadway onto Plaintiffs' property. Defendant Sheriff Benison knew of the boundaries of the Judicially Determined Easement and was explicitly told that the Bingo Defendants were trespassing on Plaintiffs property. Defendant Sheriff Benison still, with all this

knowledge, ordered Plaintiff Spencer to vacate his own property and ousted Plaintiffs from their own property which directly benefitted the Bingo Defendants; thus, perpetuating the scheme of the Bingo Defendants to do whatever it takes, no matter who or what is damaged, to ensure customers would have access over Plaintiffs' land to gamble their money in the bingo hall.

In addition, and supplemental to the two pieces of evidence discussed above, other facts show an understanding was reached between Defendant Sheriff Benison and the Bingo Defendants to deprive Plaintiffs' of their constitutional rights. During the February 24, 2016 incident, Sheriff Benison went to the bingo hall to discuss matters with Defendant Gomez. Shortly thereafter, Benison ordered Plaintiff Spencer to vacate Plaintiffs' property. As previously stated, the Greene County Sheriff's Office has a policy of staying out of civil matters, such as this property line dispute. This policy was carried out twice by two deputies of the Greene County Sheriff's Office prior to the February 24, 2018 incident. However, on February 24, 2018, Defendant Sheriff Benison strayed from the policy of the Greene County Sheriff's Office and ordered Plaintiff Spencer to vacate Plaintiffs' property. Sheriff Benison contends that the only reason he ordered Spencer to vacate his property was to promote safety by ensuring the roadway was not blocked. However, as stated in the fact section above, there is extensive evidence showing that the roadway was not blocked and cars went in and out of the Bingo Defendants' property.

Furthermore, Plaintiff Spencer showed the Greene County Sherriff's Office deputies and Sheriff Benison, himself, the bounds of the Judicially Determined Easement. Moreover, Benison received a copy of Exhibit J (the May 20, 2014 Bankruptcy Order) and knew of the boundaries of the Judicially Determined Easement before the February 24, 2016 incident. Further, "complex surveying equipment" is unnecessary to find the bounds of the 25 foot Judicially Determined Easement. Finally, Defendant Sheriff Benison has a direct pecuniary interest in the Bingo Defendants making money. The evidence, taken together, circumstantially, shows that an understanding was reached between Sheriff Benison and the Bingo Defendants to deprive Plaintiffs of their land and constitutional rights. Thus, Plaintiffs have provided sufficient evidence to show a § 1983 conspiracy claim against Defendant Sheriff Benison and the Bingo Defendants. As a result, Benison's Motion for Summary Judgment is due to be denied.

### III.   Defendant Sheriff Benison's claim to reimbursement of attorneys' fees is due to be denied because Defendant Sheriff Benison has not prevailed in this litigation.

In section III of Defendant Sheriff Benison's Motion for Summary Judgment, Defendant Sheriff Benison contends that he is entitled to reimbursement of attorneys' fees, pursuant to under 42 U.S.C. § 1988. However, whether Defendant Sheriff Benison is entitled to such a reimbursement cannot be determined at this time because no party has prevailed.

Pursuant to 42 U.S.C. § 1988, a court has the discretion to award reasonable attorneys' fees to prevailing parties in a proceeding to enforce § 1983. However, a party must "prevail" before being entitled to any attorneys' fees. *See* 42 U.S.C. § 1988. Here, no party has been held to "prevail." Thus, a determination of whether any party is entitled to reimbursement of attorneys' fees at this time is premature. As a result, Defendant Sheriff Benison's Motion for Summary Judgment is due to be denied.

## **CONCLUSION**

In sum, Defendant Sheriff Benison's Motion for Summary Judgment is due to be denied because a genuine issue of material fact exists and Defendant Sheriff Benison is not entitled to a judgment as a matter of law on any of Plaintiffs' claims. Material facts are genuinely in dispute as shown by the contradictions set forth in this Response to Defendant Sheriff Benison's fact section of his Motion.

Further, Defendant Sheriff Benison should not be afforded qualified immunity from liability under § 1983 because he acted outside the scope of his discretionary authority. Defendant Sheriff Benison is not entitled to qualified immunity from liability under § 1983 because Plaintiffs have shown that Defendant Sheriff Benison violated Plaintiffs' constitutional rights and said rights were clearly established.

Additionally, direct and circumstantial evidence shows that Defendant Sheriff Benison conspired with the Bingo Defendants to violate Plaintiffs' constitutional

rights. Finally, Defendant Sheriff Benison is not entitled to attorneys' fees because no party has prevailed in this action and such a determination is premature. As such, Defendant Sheriff Benison's Motion for Summary Judgment is due to be denied because genuine issues of material fact exist and Benison is not entitled to a judgment as a matter of law.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs respectfully request this Honorable Court to deny Defendant Sheriff Benison's Motion for Summary Judgment.

*Respectfully submitted this 22nd day of June, 2018.*

/s/ Bobby H. Cockrell, Jr.
Bobby H. Cockrell, Jr. (COC-008)
Attorney for Plaintiffs
bcockrell@cftr.law

/s/ Jonathan D. Townsend
Jonathan D. Townsend (TOW-014)
Attorney for Plaintiffs
jtownsend@cftr.law

/s/ G. Scotch Ritchey, Jr.
G. Scotch Ritchey, Jr. (RIT-024)
Attorney for Plaintiffs
sritchey@cftr.law

**OF COUNSEL:**
COCKRELL, FORD, TOWNSEND & RITCHEY, LLP
1409 University Boulevard
Tuscaloosa, Alabama 35401
Telephone: (205) 349-2009
Facsimile: (205) 758-3090

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I have on this date, served a copy of the foregoing upon the following via private process server, and/or by U.S.P.S. certified mail, return service requested, with adequate postage prepaid, and/or electronic mail, and/or regular mail, and/or hand delivered, and/or by filing a copy of the foregoing using the AlaFile system which will automatically notify all counsel of record, and/or by filing a copy of the foregoing with the Clerk of Court using the CM/ECF system which will provide notice to the following CM/ECF participants:

**E Kenneth Aycock, Jr**
E. KENNETH AYCOCK PC
P O Box 21134
Tuscaloosa, AL 35402
205-752-7788
205-752-0252 (fax)
ken@heritagetitleservice.com

**J Randall McNeill**
**Kendrick E Webb**
WEBB & ELY PC
7475 Halcyon Pointe Drive
PO Box 240909
Montgomery, AL 36124
334-262-1850
334-262-1889 (fax)
rmcneill@webbeley.com
kwebb@webbeley.com

**Mark A Scogin**
ESPY NETTLES SCOGIN &
BRANTLEY PC
2728 8th Street
Tuscaloosa, AL 35401
205-758-5591
205-758-2801 (fax)
scoginlaw@gmail.com

*/s/ G. Scotch Ritchey, Jr.*
*Of Counsel*