IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| BEVERLY SPENCER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 7:16-cv-01334-LSC |
| | ) | |
| SHERIFF JONATHAN | ) | |
| BENISON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF OPINION**

Plaintiffs Beverly Spencer ("Spencer"), C.B.S. Properties, LLC ("CBS"), and B & V Wrecker Service, Inc. ("B&V") (collectively "Plaintiffs") bring this action against Defendants Sheriff Jonathan Benison ("Sheriff Benison"), in his individual capacity and in his official capacity as Sheriff of Greene County; D.R.EA.M., Inc. ("DREAM"); Bell Mere Properties, LLC ("Belle Mere"); Accuity Capital Group, LLC ("Accuity"); Bernard Gomez ("Gomez"); and Ché D. Williamson ("Williamson") (collectively "Defendants"), alleging claims under 42 U.S.C. §§ 1983 and 1985 and state law. Before the Court are Sheriff Benison's Motion for Summary Judgment (doc. 43), Motion for Reimbursement of Fees & Costs (doc. 47), and Motion to Strike (doc. 57). The motions have been briefed and are ripe for review. For the reasons

stated below, Sheriff Benison's Motion for Summary Judgment (doc. 43) is due to be denied; his Motion for Reimbursement of Fees & Costs (doc. 47) is due to be denied; and his Motion to Strike (doc. 57) is due to be granted.[1]

## I. BACKGROUND[2]

In April 2011, Defendant Belle Mere, acting through Gomez and Williamson, purchased real estate in Greene County, Alabama from Plaintiff CBS, acting through Spencer. As part of the sale, CBS agreed to grant Bell Mere a twenty-five foot easement running from CBS's adjacent property. Belle Mere then leased the property to Accuity, which permitted DREAM to operate a bingo gambling facility, known as Frontier Bingo, on the property. CBS and Bell Mere almost immediately began to disagree over issues related to the property, and in late 2011, Bell Mere filed suit against CBS in

---

[1] Sheriff Benison's Motion to Strike (doc. 57) asks the Court to strike Plaintiffs' sur-reply (doc. 54). The Court's Uniform Initial Order (doc. 15) did not authorize a sur-reply, and Plaintiffs' did not request leave of the Court to file a sur-reply. Therefore, the Court will not consider any of the arguments made by Plaintiffs in their sur-reply. Accordingly, Sheriff Benison's Motion to Strike (doc. 57) is due to be granted.

[2] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994). The Court is not required to identify unreferenced evidence supporting a party's position. As such, review is limited to exhibits and specific portions of the exhibits specifically cited by the parties. *See Chavez v. Sec'y, Fla. Dept. of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . . .") (internal quotations omitted).

Alabama state court. On April 17, 2012, Bell Mere filed for Chapter 11 bankruptcy. During that litigation, the bankruptcy court entered an order judicially establishing the boundaries of Bell Mere's easement. However, this did not put an end to the boundary dispute.

Over the next several years, Spencer contacted law enforcement on multiple occasions claiming that Frontier Bingo and its patrons were trespassing on his property. In January 2016, Gomez hired construction workers to improve a previously constructed roadway running through the easement. The parties dispute whether this construction was outside the boundaries of the judicially recognized easement. On January 13, 2016, Spencer called 911 to report that the construction workers were trespassing on his land. Deputy Sheriff Jeffrey Grant ("Deputy Grant") responded to the call and spoke with both Spencer and the bulldozer operator. After speaking with Deputy Grant, the bulldozer operator agreed to stop working on the roadway.

On January 18, 2016, Spencer again called 911 complaining that Gomez had workers building a roadway within his property line. Deputy Sheriff Charlie Davis ("Deputy Davis") responded to that call and suggested that the bulldozer operator stop working until the property dispute was resolved. However, Deputy Davis did not get any further involved because

he did not know the property boundary lines. On February 24, 2016, Sheriff Benison responded to another call from Spencer about the roadway construction. When Sheriff Benison arrived, he observed that Spencer, his brother, and his son had put out cones, a bulldozer, and vehicles to block the construction from encroaching on what Spencer claimed was his property. He also observed that traffic was backed up on Highway 11. The parties dispute whether the cones and vehicles were blocking the driveway so that people could not enter or exit the bingo hall. Additionally, they dispute whether Sheriff Benison had received a copy of the bankruptcy order that established the boundaries of the easement so that he knew the correct property lines. However, Spencer did measure the easement boundaries during the incident with Sheriff Benison.

The parties dispute whether Sheriff Benison talked with Frontier Bingo's operators before going to speak with Spencer about his vehicles and cones. According to Spencer, Sheriff Benison entered and exited the bingo hall with Defendant Gomez prior to speaking with Spencer and his family members. When Sheriff Benison spoke with Spencer, he expressed concern that the cones and vehicles would prevent people from being able to access the bingo hall. He told Spencer that it created a public safety issue because the fire department might not be able to respond to any emergencies at the

bingo hall. Sheriff Benison went on to say: "I've got customers in here. People got customers in here. You can't block these folks." Spencer replied that his cones and vehicles were not blocking the road. Sheriff Benison then spoke on the phone with Spencer's lawyers who told him that they were attempting to get an injunction to prevent the construction workers from coming onto Spencer's property. Instead of waiting on the injunction to resolve the boundary dispute, Sheriff Benison ordered Spencer to remove the vehicles and cones from the driveway. He also threatened to arrest Spencer for disorderly conduct and told him that he would charge him with a felony if he blocked the road. A state trooper who spoke with Spencer at the scene told him that the Sheriff should not have issued the order and inserted himself in a private boundary dispute. According to Spencer, as a result of Sheriff Benison's order, he stopped confronting Frontier Bingo, and it was able to complete construction that encroached upon his property.

Central to Plaintiffs' claims against Sheriff Benison is their contention that he has a personal financial interest in the success of Frontier Bingo. The Rules and Regulations for the Operation of Bingo within Greene County, Alabama ("Rules and Regulations") provides that the Sheriff has exclusive authority to license and regulate bingo halls within the county. Half of each bingo hall's $2,500.00 licensing fee is paid to the Greene County Sheriff's

Office. Moreover, in 2015, Sheriff Benison amended the Rules and Regulations so that the Greene County Sheriff's Office receives $110 a month from each electronic bingo hall.

## II.   STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact[3] and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge should not weigh the evidence, but determine whether there are any genuine issues of fact that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "view[ing] the materials presented and

---

[3] A material fact is one that "might affect the outcome of the case." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1049 (11th Cir. 2015).

all factual inferences in the light most favorable to the nonmoving party."
*Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th
Cir. 2015) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).
However, "unsubstantiated assertions alone are not enough to withstand a
motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525,
1529 (11th Cir. 1987). Conclusory allegations and "mere scintilla of evidence
in support of the nonmoving party will not suffice to overcome a motion for
summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016)
(per curiam) (quoting *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860
(11th Cir. 2004)).  In making a motion for summary judgment, "the moving
party has the burden of either negating an essential element of the
nonmoving party's case or showing that there is no evidence to prove a fact
necessary to the nonmoving party's case." *McGee v. Sentinel Offender
Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013). Although the trial courts
must use caution when granting motions for summary judgment, "[s]ummary
judgment procedure is properly regarded not as a disfavored procedural
shortcut, but rather as an integral part of the Federal Rules as a whole."
*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## III.   DISCUSSION

### A.   SECTION 1983 CLAIMS

Pursuant to 42 U.S.C. § 1983, Plaintiffs sued Sheriff Benison, in both his individual and official capacity, for depriving Plaintiffs of their property and liberty rights in violation of the Fifth and Fourteenth Amendments. Sheriff Benison first moves for summary judgment on Count I of Plaintiffs' Complaint, arguing that qualified immunity protects him from being sued in his individual capacity. Government officials are provided complete protection by qualified immunity when sued in their individual capacities, as long as "their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vineyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity allows government officials to carry out the discretionary duties of their position "without the fear of personal liability or harassing litigation, protecting from suit 'all but the plainly incompetent or one who is knowingly violating federal law.'" *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citations omitted) (quoting *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001)). The Eleventh Circuit engages in a two-part analysis to determine whether a government official is entitled to the defense of qualified immunity. "First the

official must prove that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority. Second, if the official meets that burden the plaintiff must prove that the official's conduct violated clearly established law." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998) (citations omitted).

### 1. Scope of Discretionary Authority

When determining if an official's actions were within the scope of his discretionary authority, courts consider "whether they are of a type that fell within the employee's job responsibilities." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). Further, the Court asks if the official was "(a) performing a legitimate job-related function (that is, pursuing a job related goal), (b) through means that were within his power to utilize." *Id.* "In applying each prong of this test, [the Court] look[s] to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Id.* at 1266.

Here, the constitutional injury Plaintiffs complain of concerns Sheriff Benison's order that Spencer remove vehicles and cones from his property, thereby allowing Frontier Bingo to complete its construction and depriving

Plaintiffs without due process or just compensation of their property interest in that portion of their land. Thus, to determine whether Sheriff Benison was acting within the scope of his discretionary authority, the Court must first ask whether this order fell within Sheriff Benison's job responsibilities. In general, Alabama law provides that sheriffs have the duty to enforce court orders and the criminal laws of the county. *See* Ala. Code § 36-22-3. As such, a sheriff's job is to act as the chief law enforcement officer for his county.

Sheriff Benison argues that he was acting within his job responsibilities as a law enforcement officer when he ordered Spencer to remove his vehicles and cones because he believed that Spencer had created a potential public safety hazard. He states that he gave the order because he was worried that the driveway was blocked so that emergency vehicles could not reach the bingo hall and that it was causing traffic to back up onto Highway 11. Sheriff Benison also argues that he had the power to interfere with Plaintiffs' private property to ensure that people could enter and exit the bingo hall safely. To support this assertion, he cites to cases where the police were found to have the authority to remove vehicles from public streets and where the government was found to have the authority to prevent protestors from blocking the entrance to an abortion clinic. *See South Dakota v. Opperman*, 428 U.S. 364, 369 (1976); *Madsen v. Women's Health Ctr., Inc.*,

512 U.S. 753, 768 (1994). However, neither of these cases address whether it is within a sheriff's responsibilities as a law enforcement officer to order the removal of a private landowner's property, while it is on that landowner's property, absent a court order.

The record evidence indicates that a reasonable jury could find that Sheriff Benison was not acting as a law enforcement officer when he ordered Spencer to move his vehicles and cones. As Plaintiffs point out, Spencer had not been accused of any crime and Sheriff Benison was not enforcing a court order to eject Spencer from the property. Sheriff Benison admits that Spencer's dispute with Frontier Bingo was civil in nature. The actions of Sheriff Benison's own sheriff's deputies also suggest that getting involved in civil disputes is not typically the responsibility of members of the Greene County Sheriff's Department. Both Deputy Davis and Deputy Grant testified that their job as sheriff's deputies does not include sorting out boundary disputes. Thus, when they responded to Spencer's calls to the Sheriff's Department, they merely recommended that the bulldozer operator stop construction until after the parties resolved the boundary dispute in court. They never ordered Spencer or the bulldozer operator to take any particular action. Moreover, it is undisputed that Trooper Minor, who was on the scene

during Spencer's incident with Sheriff Benison, told Spencer that sheriffs should not insert themselves in boundary disputes. (*See* Doc. 44 at 15.)

As for Sheriff Benison's argument that he was acting due to public safety concerns, under Plaintiffs' version of the facts, the cones and vehicles were not preventing people from accessing the bingo hall. Further, the matter of ingress and egress across adjacent property is not an issue of public safety. An emergency vehicle would simply drive around or through the traffic cone. Thus, Sheriff Benison was not protecting those at the bingo hall but was instead "merely attempting forcibly to resolve a civil dispute." *See Thornton v. City of Macon*, 132 F.3d 1395, 1399 (11th Cir. 1998). As such, a reasonable jury could find that Sheriff Benison's order to remove the cones and vehicles fell outside his duties as a law enforcement officer. *See id.* Therefore, Sheriff Benison has failed to establish that he was acting within the scope of his discretionary authority and is not entitled to qualified immunity at this summary judgment stage.

2.    Constitutional Violations

Although the Court finds that Sheriff Benison was acting outside the scope of his discretionary authority, it will nevertheless consider whether Plaintiffs have presented sufficient evidence of a constitutional violation to sustain their § 1983 claims. Plaintiffs bring claims under the Due Process

Clause of the Fourteenth Amendment and the Takings Clause. The Court will address each in turn.

### a. PROCEDURAL DUE PROCESS

Plaintiffs first claim Sheriff Benison violated the Due Process Clause of the Fourteenth Amendment by requiring Spencer to vacate his property and move his vehicles without providing him notice or an opportunity to be heard. A procedural due process claim requires a plaintiff to establish "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011) (quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)). Due process typically requires that deprivations of "life, liberty, or property be preceded by notice and the opportunity for a hearing." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (internal quotation marks omitted); *see also id.* ("We have described the 'root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant property interest.'" (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971))).

Plaintiffs have arguably demonstrated that the first two elements of a procedural due process violation have been met. When assessing whether

procedural due process applies, courts "look not to the 'weight' but to the nature of the interest at stake." *Goss v. Lopez*, 419 U.S. 565, 575–76 (1975) (citing *Bd. of Regents v. Roth*, 408 U.S. 565, 570–71 (1972)). "[A]s long as a property deprivation is not de minimis, its gravity is irrelevant to the question whether account must be taken of the Due Process Clause." *Id.* at 576. Here, Spencer had a substantial property interest in the continued use of his land. *See Roth*, 408 U.S. 564 at 572 (identifying ownership interest in real estate as one of the fundamental property rights protected by the procedural due process clause). Sheriff Benison's order that Spencer remove the cones and vehicles from the driveway interfered with Spencer's constitutionally protected property interest. Indeed, Spencer asserts that he never again challenged the construction workers ability to improve the roadway because of Sheriff Benison's order. This allowed Frontier Bingo to complete its expansion of the roadway, which Spencer says encroaches upon his land, thus permanently altering his property. Additionally, none of the parties question whether Benison's conduct, as Sheriff of Greene County, constitutes "state action" for the purposes of the Due Process Clause. As such, Plaintiffs have presented sufficient evidence that Spencer was deprived of a constitutionally protected property interest and that there was state action.

However, Sheriff Benison argues that Plaintiffs have failed to demonstrate that there was a constitutionally inadequate process in place. "Although the Due Process Clause generally requires notice and an opportunity to be heard *before* the government seizes one's property . . . the Supreme Court 'has rejected the proposition that . . . the State [must always] provide a hearing prior to the initial deprivation of the property.'" *Reams v. Irvin*, 561 F.3d 1258, 1263 (11th Cir. 2009) (emphasis in original) (internal citation omitted) (quoting *Parratt v. Taylor*, 451 U.S. 527, 540–41 (1981)). If a state's post-deprivation procedures, such as state tort law remedies, are adequate, "due process d[oes] not require pre-deprivation hearings where the holding of such a hearing would be impracticable." *See Nat'l Assoc. of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1317 (11th Cir. 2011) (quoting *McKinney v. Pate*, 20 F.3d 1550, 1562–63 (11th Cir. 1994) (en banc)). "Pre-deprivation process is impractical 'where a loss of property is occasioned by a random, unauthorized act by a state employee, rather than by an established state procedure,' because 'the state cannot know when such deprivation will occur.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 532, 533 (1984)).

Here, there is no evidence that Sheriff Benison was following an established state procedure when he ordered Spencer to move the vehicles

and cones. In fact, Plaintiffs argue that Sheriff Benison's order was contrary to the Greene County Sheriff's Office's policy that it would not insert itself into civil matters. (*See* Doc. 49 at 8–9.) As such, evidence provided by Plaintiffs that Sheriff Benison did not give Spencer notice and an opportunity to be heard before making him vacate the property is insufficient to establish a procedural due process violation. *See Nat'l Assoc. of Bds. of Pharmacy*, 633 F.3d at 1318 ("It is only when the purpose of a state procedure is to effect the deprivation of a property interest that pre-deprivation process becomes feasible.").

As Plaintiffs have not presented evidence that they were entitled to pre-deprivation process, they will only be able to succeed on their procedural due process claims if the post-deprivation procedures available to them would not provide sufficient process. Failure to provide all relief available under § 1983 does not automatically render a state's post-deprivation remedy inadequate. *See Parratt*, 451 U.S. at 544. However, to be adequate, a state's post-deprivation remedy "must be able to correct whatever deficiencies exist and to provide plaintiff with whatever process is due." *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000).

Sheriff Benison argues that the Alabama State Board of Adjustment provides Plaintiffs with an adequate post-deprivation remedy. The Board has

jurisdiction over "[a]ll claims for damages to the person or property growing out of any injury to the person or property by the State of Alabama, or any of its agencies, commissions, boards, institutions or departments." Ala. Code § 41-9-62(a)(1). However, here, Plaintiffs are not claiming that the State or any of its agencies deprived them of their property. Instead, they claim that Sheriff Benison, acting individually and under the color of state law, unilaterally ordered Spencer to move the vehicles and cones. Thus, the Board would not have jurisdiction over Plaintiffs' claims, and it does not provide them with a post-deprivation remedy.

Likewise, although Alabama law provides Plaintiffs with the right to bring trespass and private nuisance actions against Sheriff Benison, the availability of these tort law claims do not provide Plaintiffs with an adequate post-deprivation remedy. As the Court has previously noted, Sheriff Benison enjoys absolute immunity from suit for any state-law claims that could be brought against him by Plaintiffs. (*See* Doc. 33 at 7–9.) To be sure, the availability of traditional governmental immunity in and of itself does not render a state's post-deprivation remedy inadequate. *See Rittenhouse v. Dekalb Cty.*, 764 F.2d 1451, 1458 (11th Cir. 1985). (finding the fact that the director of a county sewer system was immune from a negligence suit arising from his handling of an emergency situation did not render Georgia's tort law

remedy inadequate). "The constitutional question . . . is whether the state procedures, in light of the immunity, provide the process required under the Fourteenth Amendment." *See id.*

Here, it is doubtful that Alabama's tort law remedies would provide adequate post-deprivation process because bringing them would be futile. *Johnston v. Borders*, 724 F. App'x. 762 (11th Cir. 2018), is instructive. In *Johnston*, a Florida sheriff made several statements to the news media regarding a recently fired employee's involvement with the euthanization of several dogs at a local animal shelter. *Id.* at 764–65. After publishing these statements, the sheriff did not provide the employee with the opportunity to attend a name-clearing hearing as required by the procedural due process clause. *Id.* at 767. The court found that a defamation action in state court would not provide the plaintiff with an adequate post-deprivation remedy. *Id.* at 768. The court reasoned that because the sheriff enjoyed an absolute privilege for statements related to his official duties that any defamation suit brought against him would be futile. *Id.* at 767. Thus, the ability to file a defamation suit did not satisfy the requirements of procedural due process. *See id.* at 768. Here, any state tort action brought against Sheriff Benison would be just as futile as the hypothetical suit in *Johnston* because Plaintiffs would not be able to recover any monetary or injunctive relief from the suit.

This falls far short of what procedural due process requires. Therefore, Alabama law does not provide Plaintiffs with an adequate post-deprivation remedy, and Sheriff Benison is not entitled to summary judgment on the procedural due process claim.

## b. TAKINGS CLAUSE[4]

Plaintiffs also assert that Sheriff Benison's actions violated their rights under the Takings Clause. The Fifth Amendment's Takings Clause, as applied to the states through the Fourteenth Amendment, provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. The Takings Clause is typically implicated in two scenarios. First, it applies to situations where the government physically takes or occupies private property. *Yee v. City of Escondido*, 503 U.S. 519, 522 (1992). Next, it applies when the government regulates private property to such an extent that it "deprives the owner of the

---

[4] There was some initial confusion among the parties as to the exact nature of Plaintiffs' Fifth Amendment claim. Sheriff Benison believed Plaintiffs were alleging a violation of the Fifth Amendment's Due Process Clause, and moved for summary judgment on that claim on the ground that Plaintiffs could only bring such a claim against federal officials. (Doc. 44 at 27.) Plaintiffs make clear in their Response in Opposition that they were actually stating a claim under the Fifth Amendment's Takings Clause. (Doc. 49 at 19–20.) The Complaint states that "Defendant Sheriff deprived Plaintiffs' of their property rights without due process which violated the Plaintiffs' Fifth and Fourteenth Amendment rights." (Compl. ¶ 45.) Plaintiffs also alleged that Sheriff Benison "proximately caused the deprivation of Plaintiffs' property . . . which resulted in the taking and disturbance of Plaintiffs' soil and timber and denied Plaintiffs the use of and access to their property." (Compl. ¶ 48.) Although the Complaint could have been clearer, the Court finds that Plaintiffs sufficiently pleaded a Takings Clause claim.

economic use of the property." *Id.* at 523. Here, Plaintiffs argue that Sheriff Benison's order constituted a physical taking.

Sheriff Benison first argues that he is entitled to summary judgment on Plaintiffs' takings claim against him in his individual capacity because these types of claims cannot be brought against individual government employees. Several courts have concluded that an individual officer cannot be liable in his individual capacity for a taking. *See Vicory v. Walton*, 730 F.2d 466, 467 (6th Cir. 1984) (finding that a sheriff and prosecutor's seizure of evidence could not constitute a taking because the Takings Clause only applies to government bodies with the power of eminent domain); *see also Langdon v. Swain*, 29 F. App'x. 171, 172 (4th Cir. 2002) ("[T]akings actions sound against government entities rather than individual state employees in their individual capacities."). However, the Eleventh Circuit has left open the possibility that plaintiffs may bring a Fifth Amendment Takings Clause claim against individual government officials alleged to have trespassed on their land. *See Garvie v. City of Ft. Walton Beach*, 366 F.3d 1186, 1189 n.2 (11th Cir. 2004). Moreover, in the past, the Eleventh Circuit has considered takings claims brought against government officials in their individual capacities without addressing whether these claims were improperly brought. *See, e.g., Harbert Int'l.,* 157 F.3d 1271. Therefore, the Court concludes that within the

Eleventh Circuit a takings claim may be brought against a government official in his individual capacity.

Sheriff Benison also argues that Plaintiffs' takings claim fails because they did not first seek compensation in state court. In *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, the Supreme Court held that the just compensation requirement of the Takings Clause prevents plaintiffs from bringing a regulatory takings claim in federal court without first seeking compensation through available state court procedures. 473 U.S. 172, 195 (1985). While neither the Eleventh Circuit nor the Supreme Court have addressed whether this requirement extends to physical takings claims, multiple courts have found that it does. *See, e.g., Kurtz v. Verizon N.Y., Inc.*, 758 F.3d 506, 513–14 (2d Cir. 2014); *Severance v. Patterson*, 586 F.3d 490, 497 (5th Cir. 2009); *Peters v. Village of Clifton*, 498 F.3d 727, 733 (7th Cir. 2007).

However, the rationale behind *Williamson County* is inapplicable to this case. In *Williamson County*, the Court noted that the Takings Clause is usually not violated until just compensation has been denied because "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Williamson Cty.*, 473 U.S. at 194. An exception to this rule is that purely private takings automatically violate the

Takings Clause because for a taking to be valid it must be serve a public purpose. *See Kelo v. City of New London, Conn.*, 545 U.S. 469, 477 (2005). Here, Plaintiffs are arguing that Sheriff Benison took their property for a private rather than a public purpose. They assert that he appropriated their property so that Frontier Bingo could construct an improved roadway, which furthers a purely private interest. As these types of takings are unconstitutional regardless of whether compensation is paid, state proceedings would be unnecessary to determine whether a constitutional violation occurred. *See Rumber v. District of Columbia*, 487 F.3d 941, 944 (D.C. Cir. 2007) (finding that *Williamson County* did not support requiring plaintiffs bringing public use claims to first bring their claims in state court). Thus, *Williamson County*'s rationale does not apply, and Plaintiffs were not required to pursue state court remedies before bringing their takings claims.

The Court must finally determine whether Plaintiffs have presented sufficient evidence to establish a Takings Clause violation. "No magic formula enables a court to judge, in every case, whether a government interference with property is a taking." *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 31 (2012). However, the Supreme Court has drawn some bright line rules. One such rule is that a physical invasion is considered a *per se* taking because the "power to exclude has traditionally been

considered one of the most treasured strands in an owner's bundle of property rights." *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982). A physical invasion occurs not only when there is direct government appropriation of property but also when "the government gives third parties 'a permanent and continuous right to pass to and fro, so that the real property may be continuously traversed.'" *Chmielewski v. City of St. Pete Beach*, 890 F.3d 942, 949 (11th Cir. 2018) (quoting *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 832 (1987)).

Here, Plaintiffs have presented sufficient evidence that Sheriff Benison's order gave Frontier Bingo's customers a "continuous right to pass to and fro" on what they claim is a portion of their property. Although there is no evidence that Sheriff Benison ever returned to enforce his order, Plaintiffs have shown that after Spencer's confrontation with the Sheriff he never again questioned the ability of Frontier Bingo to construct the roadway. Moreover, the record is clear that Frontier Bingo was able to complete its construction within the disputed boundary line. Accordingly, its customers have been able to utilize the roadway leading up to the bingo hall. Thus, a reasonable jury could find that Sheriff Benison's order resulted in a physical taking. Therefore, Sheriff Benison is not entitled to summary judgment on the Takings Clause claim.

In sum, Plaintiffs have presented sufficient evidence that a reasonable jury could find that Sheriff Benison violated their rights under both the Due Process Clause of the Fourteenth Amendment and the Takings Clause. Therefore, Sheriff Benison's motion for summary judgment with respect to Count I is due to be denied.

B.     CONSPIRACY TO COMMIT § 1983 VIOLATION

Sheriff Benison next moves for summary judgment on Plaintiffs' claim that he conspired with the non-governmental Defendants to commit a § 1983 violation. A plaintiff states a § 1983 conspiracy claim by "showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010). A conspiracy exists if conspirators "reached an understanding to deny the plaintiff's rights." *Myers v. Bowman*, 713 F.3d 1319, 1332 (11th Cir. 2013) (quoting *Hadley v. Gutierrez*, 526 F.3d 1324, 1332 (11th Cir. 2008)). In this regard, "the linchpin for conspiracy is agreement, which presupposes communication." *Bailey v. Bd. of Cty. Corn'rs of Alachua Cty., Fla.*, 956 F.2d 1112, 1122 (11th Cir. 1992). The plaintiff need not show a "smoking gun" to show a conspiracy but must provide "some evidence of agreement between the defendants." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283–84 (11th Cir. 2002). Plaintiffs may prove a conspiracy through circumstantial

evidence. *Am. Fed'n of Labor and Congress of Indus. Orgs. v. City of Miami, Fla.*, 637 F.3d 1178, 1191 (11th Cir. 2011).

The Court finds that Plaintiffs have presented sufficient evidence for a reasonable jury to infer that Sheriff Benison reached an agreement to violate Plaintiffs' constitutional rights. Plaintiffs first argue that Sheriff Benison's statement that "his customers" were in the bingo hall supports a finding of conspiracy because it shows that he recognized a pecuniary interest in the bingo operation. Sheriff Benison's entire statement was: "I got customers in here. People got customers in here. You can't block these folks." (Doc. 45-21 at 4.) Thus, this statement supports the conclusion that he felt that he had a financial interest in the bingo operation. To further support their argument, Plaintiffs point out that Greene County's Rules and Regulations require bingo operators to pay the Sheriff's Department certain fees, such as the $110 monthly fee. Taken together, these facts suggest that Sheriff Benison had an incentive to support Greene County's bingo halls so as to keep them operating and that he had a pecuniary interest in ensuring that Frontier Bingo maintained its customer base.

Plaintiffs also point to evidence that Sheriff Benison had knowledge that Frontier Bingo expanded operations beyond the judicially determined easement as providing circumstantial evidence of a conspiracy. Viewing this

evidence in the light most favorable to the Plaintiffs, Sheriff Benison knew of the boundaries of the easement and that Frontier Bingo and its construction workers were trespassing on Plaintiffs' property. He then knowingly allowed the construction workers to continue to trespass on Plaintiffs' land by ordering Spencer to remove his vehicles and cones. This evidence is sufficient to create an inference that Sheriff Benison had a motive and took actions to "take" Plaintiffs' land.

Nonetheless, Plaintiffs must also present some evidence that Sheriff Benison reached an agreement with Frontier Bingo and its operators to deprive Plaintiffs of their constitutional rights. Plaintiffs do so by providing evidence that prior to ordering Spencer to vacate the property Sheriff Benison had a conversation with Defendant Gomez to discuss the boundary dispute. As evidence that this conversation took place, Plaintiffs rely on Spencer's deposition testimony that he saw Sheriff Benison and Defendant Gomez enter and exit the bingo hall together on the day of Sheriff Benison's confrontation with Spencer. Spencer admits that he cannot testify to the substance of this communication as he did not hear what was said between Sheriff Benison and Defendant Gomez. (*See* Doc. 49-2 at 29.) Alone, this likely would not give rise to an inference that Sheriff Benison and Defendant Gomez had reached an understanding to deprive Plaintiffs of their

constitutional rights. Nevertheless, evidence of this conversation combined with the evidence that soon after Sheriff Benison took actions in support of Frontier Bingo could give rise to an inference that there was an agreement to violate Plaintiffs' rights. Thus, Sheriff Benison's motion for summary judgment on Plaintiffs' conspiracy claim is due to be denied.

## IV.   CONCLUSION[5]

For the reasons stated above, Sheriff Benison's Motion for Summary Judgment (doc. 43) is due to be denied; his Motion for Reimbursement of Fees & Costs is due to be denied (doc. 47); and his Motion to Strike (doc. 57) is due to be granted. An order consistent with this Memorandum of Opinion will be entered contemporaneously herewith.

---

[5] Sheriff Benison has also moved for costs and attorney's fees pursuant to 42 U.S.C. § 1988. (Doc. 47.) This Section provides:

> In any action or proceeding to enforce a provision of section[] . . . 1983 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

42 U.S.C. § 1988(b). As Sheriff Benison has not been found to be a prevailing party, his request for attorney's fees under Section 1988 is due to be denied.

**DONE** and **ORDERED** on October 9, 2018.

L. Scott Coogler
United States District Judge

194800